**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MSP RECOVERY CLAIMS, SERIES LLC,      :
      :
                Plaintiff,      :
      :  Civil Action No. 1:17-cv-24013-RNS
         vs.      :
      :
ZURICH AMERICAN INSURANCE CO.,      :
      :
                Defendant      :
_____:

**DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S**
**MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT AND**
**INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 7.1(b), Defendant Zurich American Insurance Company, ("Zurich") respectfully requests that the Court schedule oral argument on Zurich's Motion to Dismiss Plaintiff's Class Action Complaint ("Motion"). Zurich respectfully submits that oral argument will aid the Court in resolving the legal issues presented in Zurich's Motion and estimates that thirty (30) minutes will be sufficient to hear argument from the parties.

## PRELIMINARY STATEMENT

Plaintiff MSP Recovery Claims, Series LLC ("Plaintiff" or "MSP Recovery") is a shell company that operates out of Plaintiff's counsel's office.  It is a serial filer of cookie-cutter complaints against insurers for alleged violations of the Medicare Secondary Payer Act ("MSPA"). This Complaint is one of dozens recently filed in which the only substantive difference in the allegations is the name of the insurer listed as the defendant.  And, because the complaints in this series are nearly identical, there is no notice of the specific claims for which Plaintiff claims Zurich American Insurance Company ("Zurich" or "Defendant") is liable.

Plaintiff alleges that it entered into undisclosed "assignments" with unidentified Medicare Advantage Organizations ("MAOs")—private insurers that contract with the federal government to provide Medicare benefits – and may, therefore, sue Zurich for allegedly "failing" to reimburse the anonymous MAOs for unspecified payments in unspecified amounts that the MAOs allegedly paid on behalf of unidentified Medicare beneficiaries.  Plaintiff seeks double damages from Zurich under the MSPA even though it does not plead that any of its MAO-assignors ever told Zurich that it owed it any reimbursement prior to filing this lawsuit.  Zurich moves to dismiss the Complaint for the following reasons.

*First*, Plaintiff does not allege a valid assignment. Plaintiff baldly asserts that an unspecified number of MAOs "assigned their recovery rights . . . to Plaintiff."  Compl. ¶ 40. But Plaintiff's fact-free pleading does not identify a single MAO, much less any assignment of rights from an MAO, and thus does not establish that Plaintiff has standing to sue. (Part I *infra*.)

*Second*, the Complaint does not state a claim for multiple independent reasons. It alleges no facts showing that the MAO-assignors' conditional payments were valid. It identifies none of the relevant parties or payments underlying Plaintiff's claims—depriving Zurich of meaningful

notice of those claims—and fails to address several required elements of an MSPA claim. (Part II.A *infra*.) Plaintiff's boilerplate pleading also does not show that Zurich was responsible for the medical expenses covered by those conditional payments (Part II.B *infra*) or that Zurich's settlements were large enough to permit litigation under the MSPA (Part II.C. *infra*). "In the absence of such facts admitting a reasonable inference that CMS made a conditional payment on behalf of [Zurich's] beneficiary, there is no basis for a secondary inference that [Zurich] was under a reimbursement obligation." *See United States ex rel. Takemoto v. Nationwide Mut. Ins.*, 674 F. App'x 92, 95 (2d Cir. Jan. 20, 2017) (affirming Rule 8 dismissal).

Plaintiff's suit seeks double damages from a defendant that has *already paid*. The MSPA does not permit Plaintiff to force Zurich to pay, in effect, *triple* its underlying liability unless, at minimum, it had knowledge of MAOs' reimbursement rights prior to settlement. Plaintiff has not alleged that Zurich knew of MAOs' reimbursement rights when it paid the settlements. (Part II.D *infra*.) Finally, Plaintiff's suit is premised, implicitly, on the idea that Zurich "failed" to pay or reimburse a claim. "Failure" in this context "connotes an active dereliction of a duty" and "intentionally withhold[ing] payment." *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 669-70 (E.D. La. 2014). That is entirely unalleged, as Plaintiff does not allege that it even demanded payment from Zurich and provided it an opportunity to pay before filing this suit. (Part II.E *infra*.)

For these reasons, the Complaint should be dismissed.

## BACKGROUND

### A. Plaintiff

An MAO is a private insurer that contracts with the government to provide Medicare benefits to Medicare enrollees. *See* 42 U.S.C. § 1395w-21(a).  MAOs administer benefits pursuant

to Part C of the federal Medicare statute.  Compl. ¶ 17.  Plaintiff alleges that it holds an assignment from an MAO(s) of claims based on the MAO's alleged status as a secondary payer under the MSPA.  Compl. ¶ 40.

Plaintiff exists for the sole purpose of bringing this litigation.  MSP Recovery was formed in February.[1]  Plaintiff's principal place of business is Plaintiff's counsel's office.  *See* Compl. ¶ 40; signature block.[2]

### B.  The Medicare Secondary Payer Act

Medicare, or an MAO, pays for certain medical expenses for Medicare enrollees, but the MSPA prohibits Medicare (or MAOs in its place) from paying for an item or service where "payment has been made, or can reasonably be expected to be made" by a primary payer, such as a liability, no-fault, or workers compensation insurer. 42 U.S.C. § 1395y(b)(2)(A)(ii); *see also id*. § 1395y(b)(2)(B)(i). MAOs are also prohibited from making conditional payments "for any expenses incurred for items or services . . . which . . . are not reasonable and necessary." 42 U.S.C. § 1395y(a)(1)(A).  Among other things, MAOs must seek to identify primary payers and the amounts payable by the primary payers, coordinate benefits with them, and report information to the government to aid identification of conditional payment claims. 42 C.F.R. § 422.108(b).

If Medicare determines that a primary payer will not pay a claim promptly, the MSPA authorizes Medicare to make payment for beneficiaries' medical services to ensure timely

---

[1] *See Department of State: Division of Corporations*, File No. 6316101, State of Delaware, https://icis.corp.delaware.gov/eCorp/ (last visited Oct. 26, 2017). Judicial notice may be taken of these public records. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam).

[2] MSP Recovery is only one node in a network of shell companies that have been set up as vehicles for bringing Medicare Secondary Payer lawsuits.  Aside from Plaintiff, the Delaware Division of Corporations website lists more than 20 entities with a variation of the name MSP Recovery LLC. *See Department of State: Division of Corporations*, Entity Search, State of Delaware, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last visited Oct. 26, 2017).

treatment. *See* 42 U.S.C. § 1395y(b)(2)(B)(i).  Such payments are "conditional" and subject to repayment by the primary payer when the primary payer's responsibility is "demonstrated" by, for example, a settlement, judgment, or other award to the beneficiary relating to the items or services at issue. *Id.* § 1395y(b)(2)(B)(i)-(ii).

In the case of a legal settlement (as alleged here), the primary payer may already have paid the beneficiary. If so, the beneficiary is automatically required to pay back Medicare for the conditional payments.  42 C.F.R. § 411.24(h).  However, if repayment is not made, Medicare can seek reimbursement from the Medicare beneficiary, any other entity that received payment from the primary plan with respect to the particular item or service, or the primary plan.  42 U.S.C. § 1395y(b)(2)(B)(ii).  It is Medicare's policy, however, is to seek recovery from the beneficiary because the insurer has already discharged its obligation under the liability policy.[3]  In the unusual event that Medicare is not able to recover from the beneficiary and seeks recourse against the primary payer, it provides notice to the primary payer via "a recovery demand letter," 42 C.F.R. § 411.22; *see also* 42 C.F.R. §§ 405.921(c), 405.924(b)(16), at which point the primary payer has administrative appeal rights.[4]

---

[3] *See Reimbursing Medicare*, Ctrs. for Medicare & Medicaid Servs., https://www.cms.gov/ Medicare/Coordination-of-Benefits-and-Recovery/Coordination-of-Benefits-and-Recovery-Overview/Reimbursing-Medicare/Reimbursing-Medicare-.html (lasted updated Oct. 15, 2015) ("In general, CMS issues the demand letter directly to: [t]he Medicare beneficiary when the beneficiary has obtained a settlement . . . or other payment" or "[t]he liability insurer . . . when that insurer . . . has *ongoing* responsibility for medicals." (emphasis added).)

[4] Plaintiff claims that Zurich is barred from challenging the validity of the unidentified conditional payments because Zurich did not "exhaust" its rights under 42 C.F.R. §§ 405.904(b), 405.906(b). Compl. ¶ 31.  That appeal process applies only to traditional Medicare. *The Centers for Medicare & Medicaid Services expressly declined to extend this appeals process to MAO reimbursement claims*. *See* Medicare Program; Right of Appeal for Medicare Secondary Payer Determinations Relating to Liability Ins. (Including Self-Ins.), No-Fault Ins., & Workers' Compensation Laws & Plans, 80 Fed. Reg. 10611-01, 2015 WL 799387 (Feb. 27, 2015). Nevertheless, Zurich was never notified of its alleged reimbursement obligations and therefore had nothing to appeal.

The requirement to look first to the beneficiary is even clearer in the case of MAOs. Specifically, 42 U.S.C. § 1395w-22(a)(4), which makes MAOs secondary payers, directs the MAO to seek payment from "(A) the insurance carrier, employer, or other entity which under such law, plan, or policy [that] *is to pay* for the provision of such services, or (B) [an individual receiving Medicare services] to the extent that the individual *has been paid* under such law, plan, or policy for such services." (emphasis added). There is nothing in the MSPA allowing an MAO to seek payment from an insurer that *has* paid for the provision of services.

Finally, the MSPA precludes CMS from seeking recovery based on settlements smaller than an annual threshold set by the Department of Health and Human Services. 42 U.S.C. § 1395y(b)(9)(A).

### C. Plaintiff's Allegations

Plaintiff asserts that unidentified MAOs made conditional payments for unidentified medical expenses to unidentified Medicare enrollees who were injured by unidentified "tortious acts" of Zurich's unidentified insureds. Compl. ¶¶ 1, 16. Plaintiff alleges that Zurich had a primary responsibility to pay these unidentified MAOs for these unidentified expenses, yet did not do so. *Id*. ¶¶ 3, 15, 44. According to Plaintiff, Zurich's responsibility to pay the unidentified medical expenses was "demonstrated" by unidentified settlements that Zurich purportedly entered into with unidentified Medicare enrollees. *Id*. ¶ 3. Plaintiff claims that Zurich acknowledged its responsibility by properly reporting some or all of these settlement claims. *Id*. ¶ 46. No insured, Medicare enrollee, medical expense, or settlement is identified in the Complaint, and Plaintiff does not plead that any MAO ever made aware of its alleged reimbursement claims either prior to Zurich settling the claims or prior to the filing of this action.

Based on nothing but these generalized accusations lacking connection to even a single identifiable transaction or event, Plaintiff purports to bring a cause of action for double damages under the MSPA, 42 U.S.C. § 1395y(b)(3)(A).  Compl. pp. 12-13.  Plaintiff purports to bring this cause of action on behalf of itself, based on unidentified assigned rights from unidentified MAOs, as well as a purported nationwide class of "MAOs and other similar entities" that have contracted with CMS to provide services to Medicare beneficiaries under Medicare Part C.  Compl. ¶ 47.

## LEGAL STANDARD

A defendant may move to dismiss a claim if a court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "[S]ubject matter jurisdiction may be attacked either facially or factually." *Cabello Barrueto v. Fernandez Larios*, 291 F. Supp. 2d 1360, 1363 (S.D. Fla. 2003).  "A court treats a facial attack on the Complaint like all other Rule 12(b) motions to dismiss, looking to see whether a plaintiff has sufficiently alleged a basis for subject matter jurisdiction, were the allegations in the Complaint taken as true." *Id.*

Dismissal is also appropriate where the complaint fails to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## ARGUMENT

**I.   THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE FACTS DEMONSTRATING IT HOLDS A VALID ASSIGNMENT.**

A cause of action based on an assignment requires a valid assignment at the time the complaint is filed.  Without an assignment, Plaintiff has no standing to sue.  *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F.Supp.2d 1311, 1317 (S.D. Fla. 2011); *see also State Farm. Mut. Auto. Ins. Co. v. Pressley*, 28 So.3d 105, 108-109 (Fla. 1st DCA 2010).[5]  "[T]he assignment . . . is the basis of the claimant's standing to invoke the processes of the court in the first place."  *Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic*, 913 So.2d 1281, 1285, 1287 (Fla. 2d DCA 2005) (holding that it was a "miscarriage of justice" to allow the claim to proceed without a valid assignment); *see also Hartford Ins. Co. of Se. v. St. Mary's Hosp., Inc.*, 771 So.2d 1210, 1212 (Fla. 4th DCA 2000) (per curiam) (absent showing that insured "assigned his right to PIP benefits to St. Mary's," St. Mary's "does not have standing to bring suit"). Any financial arrangement short of a true assignment is insufficient to convey standing. *See Cortlandt Street Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 418-20 (2d Cir. 2015) (finding that "assignment" of right to collect payment or pursue remedies was insufficient to confer standing without "legal title to, or a proprietary interest in, the claim" (internal citation and quotation marks omitted)).

Plaintiff fails to plead any assignments allowing it to bring this action.  Plaintiff fails to identify a single assignor, a single actual assignment, when any assignment(s) occurred, the nature of the rights assigned, and fails to quote or attach any assignment(s). Moreover, Plaintiff's website suggests that these are not real assignments, but financial arrangements akin to contingent fee

---

[5] This requirement that a plaintiff possess a valid assignment at the time the suit is filed applies equally in federal court and Florida state court.  Accordingly, dismissal, not remand, is required.

collection arrangements. It refers to its MAO "clients" and states that "[t]here are no out of pocket expenses to our clients, as MSP Recovery earns its fees only after a successful recovery," and that clients receive an "upfront cash payment" but then receive "funds" once a "closing occurs."[6]

A similar suit by the same lawyers here was dismissed because the "assignment" was really a contingency arrangement that did not confer standing.  *See MSPA Claims 1, LLC, v. Security Nat'l Ins. Co.*, No. 2015-28181-CA-13, 2017 WL 1375163, at *2 (Fla. 11th Cir. Ct. Mar. 31, 2017) (no standing because alleged assignment was "a contingency-based, receivables collections agreement—not a transfer of all interests and rights in any claims"); *In re BP Sec. Litig.*, MDL No. 4:10-md-2185, 2016 WL 29300, at *9 (S.D. Tex. Jan. 4, 2016).

Plaintiff's conclusory allegations amount to nothing more than legal conclusions that need not be credited by this Court.[7] Other Florida courts have wisely not credited the conclusory statements of Plaintiff's sister entities, and have repeatedly dismissed their claims for lack of a valid assignment. *See MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 212 F. Supp. 3d 1250, 1256 (S.D. Fla. Sept. 30, 2016), *reconsideration denied* (S.D. Fla. Mar. 15, 2017), *appeal dismissed* (11th Cir. Sept. 19, 2017) ("Plaintiff lacks standing to assert [the identified MAO's]

---

[6] MSP Recovery, *About MSP*, https://msprecovery.com/aboutmsp/ (last accessed Oct. 26, 2017). The Court may consider these facts. *Universal Express*, 177 F. App'x at 53 ("When a district court considers a motion to dismiss on jurisdictional grounds, it may consider matters beyond the pleadings in order to determine whether it lacked subject matter jurisdiction." (internal quotation marks omitted)).

[7] *Super Vision Int'l, Inc. v. Mega Int'l Comm. Bank Co.*, 534 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008) (dismissing claim based on conclusory allegation of assignment; a plaintiff "must allege enough factual matter to suggest" that it received an assignment); *MAO-MSO Recovery II, LLC et al v. Mercury General*, No. 2:17-cv-02525, 2017 WL 5086293, at *4 (C.D. Cal. Nov. 2, 2017) (dismissing complaints brought by Plaintiff's sister entities because "[t]he Court is not obliged to accept as true Plaintiffs' legal conclusions that the assignments exist and are valid; Plaintiffs must allege facts sufficient to support these contentions, such as the identity of the MAOs whose reimbursement rights they claim to own, the dates of the assignments, and the essential terms").

claims because it has not been validly assigned the right to do so").[8] Dismissal here is justified by Plaintiff's failure to allege any pertinent details in support of its ambiguous and conclusory allegation that it is entitled to bring these claims based on purported assignments from "numerous" or "several" MAOs.

## II.     THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO PLAUSIBLY PLEAD A CAUSE OF ACTION UNDER THE MSPA.

Plaintiff's barebones complaint lacks plausible allegations as to several required elements of an MSPA claim. Dismissal is required here because the Complaint fails to plead even the most basic facts showing Plaintiff's entitlement to relief.  The Supreme Court's plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  Here, because "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the Complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 678-79 (quoting *Twombly*, 550 U.S. at 557).

The Second Circuit recently affirmed the dismissal of a similarly conclusory complaint alleging that defendants violated the False Claims Act by avoiding MSPA reimbursement obligations. Because the complaint did not "identify any beneficiaries for whom [CMS] made conditional payments, the amounts or dates of such payments, an associated settlement, and the relation of any conditional payments to any particular defendant," the Court concluded plaintiff had not alleged "facts admitting a reasonable inference that CMS made a conditional payment on

---

[8] *See also, e.g.*, *MSPA Claims 1, LLC v. United Auto. Ins. Co.*, 204 F. Supp. 3d 1342, 1344-45 (S.D. Fla. Aug. 29, 2016) (same); *MSPA Claims 1, LLC v. Nat'l Specialty Ins. Co.*, No. 16-cv-20401, 2016 WL 4479372, at *2 (S.D. Fla. Aug. 25, 2016) (same); *MSPA Claims 1, LLC. v. Tower Hill Prime Ins. Co.*, No. 16–cv–20460, 2016 WL 4157593, at *1 (S.D. Fla. Aug. 3, 2016) (same); *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, No. 16-cv-20212, 2016 WL 4154266, at *2 (S.D. Fla. July 28, 2016) (same).

behalf of a particular defendant's beneficiary." *United States ex rel. Takemoto v. Nationwide Mut. Ins.*, 674 F. App'x 92, 95 (2d Cir. Jan. 20, 2017). The same analysis applies here.

At a minimum, the MSPA requires Plaintiff to allege that: (1) its MAO-assignors made valid conditional payments; (2) Zurich was responsible for the medical expenses covered by those conditional payments; (3) Zurich's settlements were in amounts greater than the MSPA threshold; (4) Zurich had notice of the MAOs' claims when it paid the settlements; and (5) Zurich "failed" to pay or reimburse the claim after receiving appropriate demand.  42 U.S.C. §§ 1395y(b)(2)(A), (b)(2)(B), (b)(3)(A), & (b)(9), 1395w-22(a)(4). The Complaint fails to identify and describe a single instance in which any of those conditions were met, much less all five conditions. The Complaint therefore fails to state an MSPA claim, requiring dismissal.

### A.   Plaintiff Fails to Plausibly Plead That Its MAO Assignors Made Valid Conditional Payments.

MAOs must identify primary payers and coordinate benefits with them. 42 C.F.R. § 422.108(b). MAOs may not pay "for items or services if 'payment has been made or can reasonably be expected to be made'" from, *inter alia*, a liability insurance plan.  *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016) (quoting 42 U.S.C. § 1395y(b)(2)(A)(ii)). Only if a primary payer "has not made or cannot reasonably be expected to make payment with respect to the item or service promptly" is Medicare (or an MAO) allowed to make a payment on the beneficiary's behalf, conditioned on reimbursement from the primary payer. *Id.* Here, Plaintiff has failed to plead facts showing that the MAO-assignors made attempts to coordinate benefits or determined that Zurich would not pay promptly. Thus, dismissal is warranted.  *See Security Nat'l*, 2017 WL 1375163, at *5-6 (dismissing complaint that failed to allege, *inter alia*, facts showing that MAO determined that alleged primary insurer was not expected to make payment promptly).

An MAO also is prohibited from making conditional payments "for any expenses incurred for items or services . . . which . . . are not reasonable and necessary."  42 U.S.C. § 1395y(a)(1)(A). Plaintiff has not alleged facts demonstrating that this prerequisite was met. Plaintiff simply asserts, citing 42 C.F.R. § 422.566(b), that the fact that payments allegedly were made constitutes "conclusive proof" that they were "reasonable and necessary."  Compl. ¶ 29.  But that assertion is not entitled to deference because § 422.566 does not address proof against an insurer/secondary payer.  It simply talks about the rights of beneficiaries, their representatives, and healthcare providers to request certain benefit determinations by an MAO. As a result, Plaintiff's unsupported legal conclusion requires dismissal of the action. *Security Nat'l*, 2017 WL 1375163, at *6 ("Plaintiff cannot merely rely on its formulaic conclusion that *if* Plaintiff paid, then it *must* be entitled to reimbursement").

### B.  Plaintiff Does Not Plead Facts Demonstrating that Zurich was Responsible for Reimbursing the Unidentified Conditional Payments.

A plaintiff alleging that a primary plan failed to comply with its reimbursement obligation with respect to an "item or service" under the MSPA must "demonstrate[] that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. §1395y(b)(2)(B)(ii); 42 C.F.R. § 411.21 ("Conditional payment means a Medicare payment for services for which another payer is responsible . . . ."); *see also Allstate*, 835 F.3d at 1359 ("[T]he demonstrated responsibility requirement is incorporated as a prerequisite to pursuit of the private cause of action."); *Glover v. Liggett Grp.*, 459 F.3d 1304, 1308-09 (11th Cir. 2006) (explaining that defendant's demonstrated responsibility is a condition precedent to a reimbursement obligation and must therefore be demonstrated *before* an MSP private cause of action is brought).

The term "[c]overage or covered services when used in connection with primary payments, means services for which a primary payer would pay if a proper claim were filed."  42 C.F.R. §

411.21.  Thus, MAOs are limited to seeking reimbursement of expenses related to items or services that fall within the scope of an insurer's responsibility—for example, items within the scope of a liability settlement, judgment, or award. *See Security Nat'l*, 2017 WL 1375163, at *5 (dismissing complaint where "Plaintiff fails to adequately plead facts to establish that [MAO] paid bills falling within the scope of [insured's] coverage"); *see also Caldera v. Ins. Co. of State of Pa.*, 716 F.3d 861, 865 (5th Cir. 2013) ("[A]n MSP claimant may not recover amounts from a purported 'primary plan' in excess of a carrier's responsibility under state law or the relevant contract"); *Estate of Urso v. Thompson*, 309 F. Supp. 2d 253, 260 (D. Conn. 2004) (government must determine which medical payments were related to subject accident when calculating reimbursement owed to Medicare); *Cal. Ins. Guar. Ass'n v. Burwell*, 227 F. Supp. 3d 1101, 1114 (C.D. Cal. 2017) ("Defendants do not point to anything in the MSP showing that CIGA must reimburse CMS for more than what CIGA is otherwise 'responsible' for paying").

Thus, as a prerequisite to suit, Plaintiff must establish that the payments for which it seeks reimbursement fall within the scope of Zurich's responsibility. But, the Complaint offers nothing but a conclusory allegation that settlements with unidentified Medicare beneficiaries arose out of tortious incidents.  Plaintiff's reliance on "labels and conclusions" is incompatible with the pleading standard in *Twombly* and *Iqbal*, and cannot be reconciled with controlling law in *Allstate* and *Glover* holding that Plaintiff was required to establish demonstrated responsibility as a precondition to bringing this suit.  And, because Plaintiff fails to identify a single settlement with any Medicare beneficiaries, any inference that any settlement demonstrates Zurich's responsibility to have paid for any medical expenses is not plausible.

Even if Plaintiff had identified settlements, the mere existence of settlements with MAO beneficiaries would be insufficient because settlements can be attributed to amounts other than

those for medical expenses covered by Medicare. *See Bradley v. Sebelius*, 621 F.3d 1330, 1337 (11th Cir. 2010) (where settlement of wrongful death action included estate's medical expenses as well as non-medical claims of decedent's children, only estate's allocated share of settlement could be recovered by Medicare). A settlement does not demonstrate *per se* responsibility to reimburse Medicare. *E.g.*, *Cal. Ins. Guar.*, 227 F.Supp.3d at 1113-14 (workers' compensation carriers not automatically liable for non-covered treatments lumped together with covered treatments); *Geer v. Amex Assurance Co.*, No. 09-11917, 2010 WL 2681160, at *6 (E.D. Mich. July 6, 2010) (settlements that "were for specific time periods and amounts" could not "be thought to infinitely establish Defendant's obligation to pay benefits").

Plaintiff's failure to plead demonstrated responsibility, a prerequisite to this suit, cannot be hand-waved away as "the best Plaintiff can do pre-discovery." "The MSP [Act] requires that the evidence demonstrating responsibility to pay exist *before* a claimant files an MSP action, and be *specific and identifiable*, because those are the common, limiting features of the means Congress enumerated." *Matter of Complaint of Obsession Charters, Inc.*, No. 616CV2022, 2017 WL 2812626, at *3 (M.D. Fla. June 29, 2017) (internal citation and quotation marks omitted); *see also Stalley v. Erlanger Health Sys.*, No. 1:06-CV-194, 2007 WL 672301, at *5-6 (E.D. Tenn. Feb. 28, 2007), *aff'd sub nom. Stalley v. Methodist Healthcare*, 517 F.3d 911 (6th Cir. 2008) (dismissing MSPA claim where plaintiff asserted only "unidentified injuries and 'improper billing,'" and finding that plaintiff's claim was not ripe until defendant's responsibility could be shown). Because the Complaint fails to demonstrate with any specificity whatsoever Zurich's responsibility with respect to any payments under the MSPA, it should be dismissed.

14

### C.  The Complaint Alleges No Settlement That Satisfies the MSPA's Threshold.

The MSPA precludes CMS from seeking recovery of settlement amounts that fall below the annual threshold amount.  42 U.S.C. § 1395y(b)(9)(A).  That threshold has varied between $750 and $2,000.[9]  As this Court recently recognized when dismissing a complaint filed by one of Plaintiff's sister entities, meeting the statute's threshold amount is a prerequisite to a private action by an MAO.  *MSPA Claim I, LLC. v. Nat'l Fire Ins. Co. of Hartford*, No. 16-20531-CIV, 2017 WL 4217135, at *2 (S.D. Fla. Sept. 20, 2017). Plaintiff cannot state a claim under the MSPA when it has failed to identify *any* settlement payment that meets the minimum threshold for the calendar year in which the payment was allegedly rendered. For that reason, too, the Complaint must be dismissed. *See id.* at *3.

### D.  Plaintiff Has Failed to Allege that Zurich Paid Its Settlements with Knowledge that the Money Was Instead Owed to MAOs.

Plaintiff alleges no facts showing that, at the time Zurich paid settlements, it knew that MAOs had made conditional payments for items covered by the settlements. Under those circumstances, Plaintiff may not seek repayment from Zurich, which would be a "double

---

[9] *See MSPA Claim I, LLC. v. Nat'l Fire Ins. Co. of Hartford*, No. 16-20531-CIV, 2017 WL 4217135, at *3 (S.D. Fla. Sept. 20, 2017) (citing the $2,000 threshold at the time of the settlement at issue); May 2017 Report to Congress, Computation of Annual Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation Settlement Recovery Threshold at p. 1, https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Coordination-of-Benefits-and-Recovery-Overview/Downloads/May-2017-Computation-of-Annual-Liability-Insurance.pdf (announcing that CMS's threshold for physical trauma-based liability insurance, no-fault insurance, and workers' compensation settlements will be $750 effective January 1, 2017); October 2016 Report to Congress at pp. 2-3 and Appendix B p. 3, https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Coordination-of-Benefits-and-Recovery-Overview/Downloads/October-2016-Computation-of-Annual-Liability-Insurance-Settlement-Recovery-Threshold.pdf (indicating that CMS would maintain a threshold of $1,000 for physical trauma-based liability insurance settlements from the prior year, and setting a 2016 threshold of $750 for no-fault insurance and workers' compensation settlements).

payment"—and effectively a *triple* liability, given that Plaintiff seeks double damages under the MSPA.

This action alleges that Zurich has *already made* "settlement payments" to satisfy its liability to MAO enrollees. Compl. ¶ 16. But, as discussed above, under 42 U.S.C. § 1395w-22(a)(4), MAOs ordinarily must look to beneficiaries for reimbursement if primary payers have already paid those beneficiaries.  The point is further illustrated by the associated regulation: MAOs may "bill" either "(1) [t]he insurance carrier, the employer, or any other entity that *is* liable for payment for the [enrollee's Medicare] services under [the MSPA]" or "(2) [t]he Medicare enrollee, to the extent that he or she *has been paid* by the carrier, employer, or entity for covered medical expenses." 42 C.F.R. § 422.108(d) (emphases added). Thus, based on these provisions, MSP should seek a reimbursement from its enrollees, not from Zurich.

Requiring MAOs to generally seek reimbursement from an enrollee when an insurer has already paid is consistent with courts' analysis of a prior parallel MSPA provision applying to CMS.  That provision granted CMS a cause of action against "any entity that *is* required or responsible to pay under a primary plan" or "any other entity . . . that *has received* payment from that entity." *Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 417 (D.C. Cir. 1994) (emphases added) (citing pre-2003 version of 42 U.S.C. § 1395y(b)(2)(B)). The D.C. Circuit interpreted that language to require that "whenever a third-party payment has been made, the government's direct right of action lies only again its recipient." *Id.* The court held that because the statute did not permit recovery from an insurer that had already paid the beneficiaries, Medicare could not bring a direct action under the MSPA to recover damages. Rather, Medicare could seek repayment from the insurer based only on a separate subrogation theory, which required showing that the primary payer knew or should have known that it was paying wrong party (the beneficiary). *Shalala*, 23

F.3d at 417-18; *see also United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 900-03 (11th Cir. 2003) (citing *Shalala* favorably and holding that Medicare can bring subrogation claim in double-payment scenario under "knew or should have known" standard).

After *HIAA* and *Baxter* were decided, Congress amended § 1395y(b)(2)(B) to permit **CMS** to sue entities that "are *or were* required or responsible . . . to make payment," altering the earlier "*is* required or responsible" language. *Medicare Prescription Drug, Improvement, and Modernization Act of 2003*, Pub. L. 108-173, 117 Stat. 2066 (emphasis added). Significantly, however, Congress chose not to amend the corresponding MAO provisions, which retain the "is to pay" and "has been paid" structure. Thus, to the extent that the amendment permits **CMS** to recover payments from primary insurers who have already paid irrespective of their knowledge— which is an open question—that interpretation would not provide any cover for MAOs to seek double payment from primary payers that paid beneficiaries with no knowledge of the MAOs' claims.[10] Indeed, in *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229 (11th Cir. 2016), the court allowed an MAO to bring an MSPA private right of action in a double-payment scenario on the basis that the MAO had *actual knowledge* of the MAO's reimbursement rights when it paid the settlement. *Id.* at 1239.  Here, unlike in *HIAA* and *Western Heritage*, Plaintiff has alleged no facts demonstrating that, at the time of the settlements, Zurich was on notice that MAOs were owed reimbursement.  That is fatal.[11]

---

[10] Although 42 C.F.R. § 422.108(f) contains broad language granting MAOs the "same rights to recover" as CMS, that catchall regulation cannot confer identical rights on issues, like double-payment, as to which statutes provide differing rights. *See, e.g.*, *Health Ins. Ass'n of Am.*, 23 F.3d at 413 (invalidating MSP regulations that went "beyond [the government's] statutory authority"). Moreover, if § 422.108(f) imported the double-payment rule wholesale, it would be at odds with another portion of the very same regulation, § 422.108(d), that directs MAOs to bill enrollees where the primary payer has already paid.

[11] Asking MAOs to seek reimbursement from their enrollees when a liability settlement is paid is also sound policy. For traditional Medicare, taxpayers bear the full burden when payments are not

### E.  Plaintiff Has Not Pled Facts Demonstrating that Zurich "Failed" to Make a Primary Payment or Reimbursement Under the MSPA.

Section 1395y(b)(3)(A)—the basis for Plaintiff's claim—allows a private cause of action for double damages only where a primary payer "failed" to reimburse Medicare.  As discussed in Part II.A, Plaintiff fails to plausibly allege that Zurich left even one payment unreimbursed, requiring dismissal.  But even if unreimbursed payments existed, that would not be enough to support a double damage claim under the MSPA's private right of action.  Plaintiff does not plead any facts showing that Zurich failed to make a payment after being properly charged by an MAO or receiving a demand for payment, or even that Zurich otherwise knew of any unpaid medical expenses for which it allegedly was responsible prior to the filing of this lawsuit.  Without such allegations, Plaintiff's punitive double damages claim cannot stand.

The Eleventh Circuit has emphasized that an MAO may bring a private action only after it charges a primary plan and the primary plan does not make payment.  *Western Heritage*, 832 F.3d at 1238.  In reaching this conclusion, the court referenced 42 C.F.R. § 422.108, which requires MAOs to identify primary payers *and the amounts payable by those payers*, and instructs MAOs that, to collect from a primary insurer, they may either bill the primary insurer or authorize a provider to bill directly.  42 C.F.R. § 422.108(b),(d).  Other provisions also contemplate that the primary plan will be given notice before any suit.  *E.g.*, 42 U.S.C. § 1395y(b)(2)(B)(vi) (period

---

recovered; for the Advantage program, the government pays MAOs "a fixed capitation rate . . . whether MAOs collect from third parties or not." Jennifer Jordan, *Is Medicare Advantage Entitled to Bring A Private Cause of Action Under the Medicare Secondary Payer Act?*, 41 Wm. Mitchell L. Rev. 1408, 1416 (2015). Extracting double payment from insurers to repay Medicare, while less equitable than pursuing beneficiaries, might sometimes be necessary to protect taxpayer dollars. But the same is not true in the MAO context. In addition, because traditional Medicare is subject to more oversight than the Medicare Advantage program, *see id.* at 1439, and provides greater administrative appeal rights, it is reasonable to trust CMS to deploy the double-payment rule with due discretion and fairness.

during which CMS may submit "*request for payment* to the entity required or responsible . . . to pay" (emphasis added)); 42 C.F.R. § 411.22(c) (providing for recovery as directed in "demand letter"), § 405.921(c) ("notice of initial determination" sent to insurers), § 411.24(c) (CMS will recover double damages only if "it is *necessary* for CMS to take legal action to recover from the primary payer" (emphasis added));[12] 42 U.S.C. § 1395w-22(a)(4) (MAOs are authorized to "charge" primary payers to recoup conditional payments). These references to "requests for payment," "demand letters," "notice," "charging," "billing," "coordinating," and whether litigation is "necessary" all reflect the pre-suit collection efforts envisioned by the MSPA.

Nothing in the regulations suggests an MAO can skip over these provisions, which require that the MAO identify and "bill" the primary payer for the specific services and items for which the MAO seeks reimbursement, and instead file a putative class action seeking a double damages windfall based on general allegations with no basis in fact pled in the Complaint. *See Glover*, 459 F.3d at 1309 (emphasizing importance of defendant having an "opportunity to reimburse Medicare after responsibility was established but before the [double damages] penalty attached"); *Collins*, 73 F.Supp.3d at 670 (stating that "failure" under MSPA "connotes an active dereliction of a duty, and the award of double damages is intended to have a punitive effect on plans who intentionally withhold payment" (emphasis added)); *see also Baxter*, 345 F.3d at 905-06 (directing district court on remand to consider whether it would be permissible to award double damages under the MSPA

---

[12] CMS notifies primary payers of their reimbursement obligations and gives time to make payment or appeal the decision; only after those procedures prove ineffective will CMS "refer debts to [DOJ] for legal action . . . to collect double damages." *Medicare's Recovery Process*, Ctrs. for Medicare & Medicaid Servs., https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Beneficiary-Services/Medicares-Recovery-Process/Medicares-Recovery-Process.html (last updated July 11, 2016); *see also Insurer NGHP Recovery*, Ctrs. for Medicare & Medicaid Servs., https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/InsurerServices/Insurer-NGHP-Recovery.html (last modified Dec. 21, 2015).

without "a showing of wrongful intent" given that "an award of multiple damages usually requires [such] a heightened showing").

Here, Plaintiff pleads no facts plausibly alleging that Zurich "failed" to make any payment after an MAO properly charged it or demanded payment, or even that it had knowledge that an MAO paid any medical bill for which Zurich allegedly was responsible before this suit. Rather, the Complaint jumps from an allegation that unidentified MAOs paid some unidentified amounts, to a generalized statement of the law that Zurich has a reimbursement obligation when Zurich's "responsibility is demonstrated," to an allegation that "[f]ailure to reimburse Plaintiff and the Class Members for making payments has enabled Defendant to circumvent its responsibilities under the MSP provisions." Compl. ¶ 59. Plaintiff's failure to allege facts showing that Zurich was notified that an MAO had made certain payments for which Zurich had a responsibility and nevertheless refused to pay is fatal to Plaintiff's claim.

## CONCLUSION

For the reasons stated above, Plaintiff's Complaint should be dismissed in its entirety.

Date:  November 27, 2017.

Respectfully submitted,

By:   /s/ Kendall Coffey
          Kendall B. Coffey, Esq.
          Florida Bar No. 259861
          kcoffey@coffeyburlington.com
          Scott A. Hiaasen, Esq.
          Florida Bar No. 103318
          shiaasen@coffeyburlington.com
          lperez@coffeyburlington.com
          service@coffeyburlington.com
          **COFFEY BURLINGTON, P.L.**
          2601 South Bayshore Drive, Penthouse One
          Miami, Florida  33133
          Telephone: (305) 858-2900
          Facsimile:  (305) 858-5261

– and –

Michael Menapace, Esq.
(Admitted *pro hac vice*)
**WIGGIN AND DANA, LLP**
20 Church Street
Hartford, CT 06103
Telephone: (860) 297-3700
Facsimile:  (860) 525-9380
mmenapace@wiggin.com

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Defendant Hartford's

Motion to Dismiss Plaintiff's Class Action Complaint and Incorporated Memorandum of Law in

Support was served by Notice of Electronic Filing generated by CM/ECF, on <u>November 27, 2017</u>,

on all counsel or parties of record on the Service List below.

| SERVICE LIST | |
|---|---|
| **John H. Ruiz, Esq.**<br>**Frank C. Quesada, Esq.**<br>MSP RECOVERY LAW FIRM<br>5000 S.W. 75th Avenue, Suite 400<br>Miami, Florida 33155<br>Telephone: (305) 614-2222<br>serve@msprecovery.com<br><br>*Counsel for Plaintiff* | |

*/s/ Kendall Coffey*
Kendall Coffey